IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

A.M.C., by her parents and legal guardians,
J.C. and N.C., J.C. and N.C.,

                                                                 OPINION AND ORDER

                Plaintiffs,

                                                                  18-cv-175-bbc

    v.

SCHOOL DISTRICT OF LA CROSSE,
BENJAMIN R. BURNS, DAVID APONTE,
JOHN DOE 1-50, JANE DOE 1-50 and
AEGIS CORPORATION,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff A.M.C. is a high-school age student with Down Syndrome and cognitive disabilities. In 2015, while she was enrolled as a special education student at La Crosse Central High School, she was sexually assaulted by another student with cognitive disabilities. A.M.C. and her parents filed this suit under 42 U.S.C. § 1983 and state law, seeking to hold the School District of La Crosse and two of its former employees, Benjamin Burns and David Aponte, liable for plaintiffs' injuries.

Now before the court is defendants' motion to dismiss. Dkt. #7. Defendants argue that plaintiffs' allegations are insufficient to state a federal claim upon which relief may be granted and that they are protected by qualified immunity. Defendants also argue that plaintiffs' state law claims should be dismissed on immunity grounds. For the reasons below, I am granting the motion with respect to plaintiffs' federal claims. Because plaintiffs rely on 28 U.S.C. § 1367 as the basis for exercising jurisdiction over their state law claims, the court will dismiss those claims under § 1367(c)(3) without prejudice to plaintiffs' refiling of them in state court.

1

Plaintiffs allege the following facts in their complaint.

ALLEGATIONS OF FACT

Plaintiff A.M.C. is a high-school age individual who has Down Syndrome and a cognitive disability. She functions at the level of a 9 or 10 year old and has difficulty understanding whether a situation or person is safe. In 2015, A.M.C. was enrolled as a special needs student at the La Crosse Central High School, located within defendant School District of La Crosse. Defendant Benjamin Burns was a school psychologist and defendant David Aponte was a case manager at La Crosse Central. Defendants Burns and Aponte knew about A.M.C.'s disability and special vulnerability to danger and knew she should be supervised at all times while she was present at school. When A.M.C.'s parents enrolled her at La Crosse Central in September 2015, they declined to sign a form that would have given A.M.C. permission to temporarily leave the high school grounds for any reason.

A.S.L. is a male student enrolled at La Crosse Central High School with cognitive disabilities resulting from a traumatic brain injury. Sometime before September 2015, A.S.L. had sexually assaulted two girls at the high school, including a girl with Down Syndrome whom he had sexually assaulted several times at school and on a school bus. (Plaintiffs' complaint does not provide any details about the nature of these previous sexual assaults.) Defendants were aware of the previous incidents and were supposed to supervise A.S.L. "100% of the time" while he was at the high school. However, in September 2015, defendants Burns and Aponte decided to give A.S.L. more freedom and chose not to supervise him constantly.

On September 21, 2015, plaintiff A.M.C. and A.S.L. were in the special education

hallway during lunch time. A.M.C. went to her locker and A.S.L. followed her. A.S.L. then steered A.M.C. from her locker, through the hallway and outside. Defendant Aponte watched A.S.L. follow A.M.C. to her locker and lead her outside, but did not intervene. After going outside, A.S.L. took A.M.C. to an area near the track and sexually assaulted her.

OPINION

Plaintiffs contend that defendants Aponte and Burns violated A.M.C.'s right to substantive due process under the Fourteenth Amendment and committed the state law tort of negligence by failing to prevent the sexual assault on A.M.C. A.M.C.'s parents, J.C. and N.C., also bring a claim for loss of companionship, and all plaintiffs bring indemnification claims against defendant School District of La Crosse. Defendants move to dismiss plaintiffs' due process claims for failure to state a claim upon which relief may be granted and on the grounds of qualified immunity. Defendants move to dismiss the state law claims on immunity grounds.

A  Substantive Due Process

Plaintiffs contend that defendants violated A.M.C.'s right to substantive due process by failing to prevent A.S.L. from sexually assaulting her. However, the Fourteenth Amendment does not generally impose a duty on governmental employees to protect individuals from harm by private actors. The due process clause places a limitation on the *state's* power to act; it does not act "as a guarantee of certain minimal levels of safety and security." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195 (1989). Its purpose is "to protect people from the State, not to ensure that the State protect[s] them from each other."

3

Id. at 196. See also Paine v. Cason, 678 F.3d 500, 508 (7th Cir. 2012) ("[T]he Constitution is a charter of negative liberties rather than a source of rights to protection or treatment."). Thus, in DeShaney, the Supreme Court concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

This principle has two exceptions. First, the state must protect individuals with whom it has a "special relationship," such as a custodial relationship that cuts off alternative avenues of aid. D.S. v. East Porter County School Corp., 799 F.3d 793, 798 (7th Cir. 2015)(citing Monfils v. Taylor, 165 F.3d 511, 516 (7th Cir. 1998)). The Supreme Court has noted that a special relationship exists when the state incarcerates a prisoner, Estelle v. Gamble, 429 U.S. 97, 103–04 (1976), or involuntarily commits someone to an institution. Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982). The Court reasoned in DeShaney that:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 200. The Court explained that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id.

Second, the "state created danger" exception applies when "a state actor's conduct 'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been.'" D.S., 799 F.3d at 798 (quoting

4

Reed v. Gardner, 986 F.2d 1122, 1126 (7th Cir. 1993)). This exception consists of three elements: (1) the state, by its affirmative acts, created or increased a danger faced by an individual; (2) the state's failure to protect that individual from danger was the proximate cause of her injury; and (3) the state's failure to protect shocks the conscience. Id.

Plaintiffs argue that A.M.C. has a viable substantive due process claim based on the "special relationship" and "state created danger" doctrines. Defendants argue that plaintiffs' allegations are inadequate to invoke either exception. Alternatively, defendants argue that they are entitled to qualified immunity with respect to plaintiffs' due process claims.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). I address each of the parties' arguments below.

1. Special relationship exception

Defendants contend that plaintiffs cannot proceed under the "special relationship" exception to the limitations of due process because plaintiffs' allegations do not suggest that the school district or any individual defendant had custody or control over A.M.C. sufficient to

5

create a "special relationship" requiring constitutional protection. Defendants point out that the Supreme Court has never recognized a school as having a special relationship with a student, and the Court of Appeals for the Seventh Circuit has held specifically that schools do not generally have a special relationship with their students. See, e.g., Stevens v. Umsted, 131 F.3d 697, 702-03 (7th Cir. 1997); J.O. v. Alton Community Unit School District 11, 909 F.2d 267, 268, 272–73 (7th Cir. 1990) ("At most, the state might require a child to attend school . . . but it cannot be suggested that compulsory school attendance makes a child unable to care for basic human needs. The parents still retain primary responsibility for feeding, clothing, sheltering, and caring for the child.").

Several other courts have also concluded that public schools do not have a special relationship with a student that would require the school to protect the student from harm at the hands of a private actor. See, e.g., Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys, 675 F.3d 849, 858 (5th Cir. 2012) ("[E]ach circuit to have addressed the issue has concluded that public schools do not have a special relationship with their students, as public schools do not place the same restraints on students' liberty as do prisons and state mental health institutions."); Patel v. Kent School District, 648 F.3d 965, 968–69, 972–74 (9th Cir. 2011); Stevenson ex rel. Stevenson v. Martin County Board of Education, 3 Fed. Appx. 25, 27, 30–31 (4th Cir. 2001); Hasenfus v. LaJeunesse, 175 F.3d 68, 69–72 (1st Cir. 1999); Wyke v. Polk County School Board, 129 F.3d 560, 563, 568–70 (11th Cir. 1997); Dorothy J. v. Little Rock School District, 7 F.3d 729, 731–34 (8th Cir. 1993); D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1366, 1370–73 (3d Cir. 1992). Courts have found no special relationship even where the student is cognitively disabled and in a special

6

education program.  See, e.g., Patel, 648 F.3d at 968 (no special relationship existed between public school and developmentally disabled high-school student and); Stevens, 131 F.3d at 699-700 (no special relationship between school and developmentally disabled student with visual, hearing and other difficulties); Dorothy J. v. Little Rock School District, 7 F.3d at 731 (no special relationship between school and cognitively disabled student in restrictive special education program).

In response, plaintiffs do not identify any case in which a court has concluded that a public school had a special relationship with a student sufficient to support a due process claim. Nonetheless, plaintiffs argue that their claim is not foreclosed because the Court of Appeals for the Seventh Circuit has commented that there *could* be a situation in which a school has a "special relationship" with a student.  Specifically, the court stated in a footnote in Nabozny v. Podlesny, 92 F.3d 446, 459, n.13, (7th Cir. 1996), that there may be situations in which a public school is "in a custodial relationship with its students," such as where the school has a high level of control over the students.  Plaintiffs argue that their allegations suggest that La Crosse Central High School had a "custodial relationship" with A.M.C. in light of her cognitive disabilities and need to be constantly supervised while she was at the school.  They argue that these allegations are sufficient to constitute the situation suggested by the footnote in Nabozny.

Plaintiffs' argument is not persuasive.  Because the plaintiff in Nabozny was not pursuing a special relationship theory, the court of appeals did not define specifically when a special relationship would exist between a school and student, and the court has not provided any further guidance since Nabozny.  However, several cases suggest that the relationship between school and student would need to be more "custodial" in nature and involve a higher level of

7

restraint than plaintiffs' allegations in this case suggest. E.g., Stevens, 131 F.3d at 702 (special relationship may exist if there is "a degree of restraint on an individual's personal liberty that make them sufficiently similar to the situations of incarceration and institutionalization"). Plaintiffs do not allege that A.M.C. was placed involuntarily at La Crosse Central High School or that her parents no longer had custody over her and were responsible for her well-being. DeShaney, 489 U.S. at 199-200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.") Moreover, it is not enough that the school was responsible for supervising A.M.C. during the school day, because plaintiffs have not alleged that A.M.C.'s parents relinquished to the school all control or responsibility for providing her basic needs. Stevens, 131 F.3d at 703 (citing D.R. by L.R., 972 F.2d at 1372 ("[T]he school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in DeShaney, particularly when their channels for outside communication were not totally closed.")). Accordingly, I conclude that plaintiffs' allegations are not sufficient to state a substantive due process claim based on a "special relationship" theory.

Moreover, even if I were to assume that plaintiffs' allegations are sufficient to suggest that defendants' high level of control over A.M.C. equated to "custody" over A.M.C. such that a "special relationship" existed for purposes of due process, plaintiffs cannot overcome defendants' qualified immunity defense. Plaintiffs have identified no legal authority stating that a school has a special relationship with students with severe disabilities, let alone "existing precedent" that places the question "beyond debate." Ashcroft, 563 U.S. at 741. Rather, as stated above,

8

numerous courts have rejected plaintiffs' theory. Thus, the contours of the "special relationship" in the special education context are not so clear that defendants would have known that they were obligated under the Fourteenth Amendment to protect A.M.C. from sexual assault by another student. Therefore, plaintiffs' due process claim based on a "special relationship" will be dismissed.

2. State-created danger exception

Plaintiffs also seek to proceed on a substantive due process claim under the state-created danger doctrine. Under the state-created danger doctrine, "a substantive due process claim can proceed where the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" Wilson–Trattner v. Campbell, 863 F.3d 589, 593 (7th Cir. 2017) (quoting Doe v. Village of Arlington Heights, 782 F.3d 911, 916 (7th Cir. 2015)). Defendants argue that plaintiffs cannot succeed on a state-created danger theory because plaintiffs cannot satisfy any of the required elements of the claim. In particular, defendants argue that plaintiffs cannot show that (1) defendants took affirmative acts that created or increased the danger to A.M.C.; (2) defendants' failure to protect A.M.C. from danger was the proximate cause of her injury; and (3) defendants' failure to protect A.M.C. shocks the conscience. D.S., 799 F.3d at 798 (setting forth elements of state-created danger theory). Because I agree with defendants that plaintiffs cannot satisfy the first element of a state-created danger theory, I need not address the remaining elements.

To satisfy the first element of a state-created danger claim, plaintiffs' allegations must suggest that defendants took an affirmative act that created or increased the danger that caused

9

A.M.C.'s harm. King ex rel. King v. East St. Louis School District 189, 496 F.3d 812, 817–18 (7th Cir. 2007). See also Stevens, 131 F.3d at 705 ("[P]laintiff must plead facts showing some *affirmative act* on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger.") (emphasis in original). The court of appeals has cautioned that "[t]o 'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent DeShaney's general rule." Doe v. Village of Arlington Heights, 782 F.3d 911, 917 (7th Cir. 2015). "When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." Id. (citation omitted).

In this instance, plaintiffs argue that they have alleged two affirmative acts that increased the danger of sexual assault to A.M.C.: (1) defendants Aponte and Burns's decision to give A.S.L. "more freedom" at the high school in September 2015; and (2) Aponte's permitting A.S.L. to lead A.M.C. outside shortly before the assault. However, these "actions" are actually allegations of "inaction." Plaintiffs' allegations suggest that "giving freedom" to A.S.L. means only that school officials failed to supervise A.S.L. as closely as they previously had. Similarly, Aponte's "permitting" A.S.L. to lead A.M.C. outside means only that Aponte failed to intervene to prevent A.M.C. from going outside unsupervised. Thus, plaintiffs have alleged only that defendants "just stood by and did nothing to prevent private violence," which is not enough to proceed on a state-created danger theory. Village of Arlington Heights, 782 F.3d at 917. See also Wilson–Trattner, 863 F.3d at 596 ("Mere indifference or inaction in the face of private violence cannot support a substantive due process claim[.]"). In sum, it is not enough for

10

plaintiffs to allege that A.M.C.'s harm could have been averted if defendants had acted. Sandage, 548 F.3d at 597 ("If all that were required was a causal relation between inaction and harm, the rule of DeShaney would be undone.") Rather, plaintiffs must allege that A.M.C. was "safe before the state intervene[d] and unsafe afterward." Id. at 598. Plaintiffs' allegations fail to meet this standard.

Finally, even if plaintiffs' allegations suggested that defendants took an affirmative act that increased or created the danger to A.M.C., defendants are entitled to qualified immunity. Plaintiffs' allegations do not implicate a clearly established constitutional right. The court of appeals has stated that the "state-created danger exception is a narrow one," Village of Arlington Heights, 782 F.3d at 917, and has applied it in only a few cases, all of which are clearly distinguishable from the present case. For example, in White v. Rochford, 592 F.2d 381 (7th Cir. 1979), the police arrested a driver for drag racing and left the children passengers stranded alone in the car on a busy highway on a cold night. In Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993), the court concluded that police officers could be held liable under the state-created danger exception where they arrested a sober driver and left behind an obviously drunk passenger with the keys to the vehicle who later caused a collision, injuring the plaintiffs. In Monfils v. Taylor, 165 F.3d 511 (7th Cir. 1998), an informant was murdered by a crime suspect after police officers gave the suspect a recording of the victim's voice, even though the informant "begged" them not to release the recording. More recently, in Paine v. Cason, 678 F.3d 500 (7th Cir. 2012), the police arrested a mentally-ill woman in a safe area and then released her into a dangerous neighborhood, where she was later raped and fell or jumped from the seventh floor of a building. "In each of these cases, the police encountered a potential danger and turned it

11

into an actual one." Arlington Heights, 782 F.3d at 917.

Plaintiffs' allegations are not sufficiently similar to those cases in which the court of appeals has applied the state-created danger exception. Instead, plaintiffs' allegations are more similar to the many cases in which courts have found that inaction by the state is not enough to trigger an obligation to act. E.g., Windle v. City of Marion, Indiana, 321 F.3d 658, 661-62 (7th Cir. 2003) (police officer's failure to intervene to protect student despite knowledge that she was being sexually molested by middle school teacher was "inaction" that did not create or increase her danger); Arlington Heights, 782 F.3d at 917 (officer who left woman alone with three intoxicated men who later sexually assaulted her did not create danger or make any danger worse); Stevens, 131 F.3d at 705 ("[i]naction by the state in the face of a known danger is not enough to trigger the obligation [to protect citizens from each other]"). For these reasons, I conclude that defendants are entitled to qualified immunity on plaintiffs' state-created danger theory.

## B. State Law Claims

Plaintiffs' substantive due process claims are the only federal claims raised in their complaint. Plaintiffs rely solely on 28 U.S.C. § 1367 to support exercise of jurisdiction over their state law claims. Under these circumstances, the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015). Because I see no reason to depart from the general rule in this case, I will dismiss plaintiffs' state law claims without prejudice to their refiling those claims in state court.

ORDER

IT IS ORDERED that the motion to dismiss filed by defendants School District of La Crosse, Benjamin R. Burns, David Aponte and Aegis Corporation, dkt. #7, is GRANTED as to the federal claims in this case. The state law claims are DISMISSED without prejudice in accordance with 28 U.S.C. § 1367(c)(3).

Entered this 28th day of September, 2018.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge